NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David GRIFFIN,<br><br>    Plaintiff,<br><br>v.<br><br>METROMEDIA ENERGY, INC., Jonathan MORRIS, and Laurence MORRIS,<br><br>    Defendants. | Civ. No. 10-3739<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

### INTRODUCTION

    This matter comes before the Court upon Defendants Metromedia Energy, Inc., Jonathan Morris, and Laurence Morris's Motion to Dismiss [docket # 8] and Plaintiff David Griffin's Cross-motion to Amend the Complaint [11]. The Court has decided the motions after considering the parties' written submissions, without holding oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons given below, Defendants' motion to dismiss is granted, and Plaintiff's motion to amend is denied.

### BACKGROUND

    The following allegations, which are laid out in Plaintiff's Complaint [1], are accepted as true for the purpose of deciding these motions.

    Plaintiff David Griffin is a former employee of Metromedia Energy, Inc. ("MME") who claims he was wrongfully terminated by MME in retaliation for complaining about fraudulent business practices to his supervisors. Plaintiff began working at MME in December 1999.

(Compl. ¶ 7.)  He was a Regional Manager who reported directly to management in New Jersey, including to the two individual defendants.  (*Id.* ¶¶ 7–8.)

According to Plaintiff, in December 2008, he "became aware that the Company was fraudulently overbilling customers for its products" through manipulation of its billing systems.  (*Id.* ¶ 9.)  Defendants Jonathan and Laurence Morris are alleged to have known and approved of the fraud.  (*Id.*)  Plaintiff complained to Defendants and refused to participate in the fraudulent practices, although the Complaint does not specify when Plaintiff communicated with the Defendants.  (*Id.* ¶ 10.)  Plaintiff was then "summarily and abruptly terminated . . . in retaliation for said objections, opposition, and refusal" on July 28, 2009.[1]  (*Id.* ¶¶ 7, 11.)

Plaintiff filed this suit on July 23, 2010, alleging that his termination violated the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq*.  He claims his termination caused severe emotional distress, anxiety, and humiliation.  (Compl. ¶ 13.)

Defendants filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) [8].  They argue that Plaintiff's complaint fails to plead sufficient factual detail to support a claim under CEPA.  (Defs.' Mem. 1) [8-1].  In response, Plaintiff argues that the motion satisfies the pleading requirements.  (Pl.'s Br. 1) [11-1].  However, Plaintiff also cross-moves to amend the complaint, adding factual allegations and asserting two new causes of action—for wrongful termination and tortious interference with prospective economic advantage.  (Am. Compl. ¶¶ 15–18, 19–20, attached as Patterson Cert. Ex. A) [11-2] (hereafter, "Am. Compl.")  Defendants oppose the motion to amend because the two additional counts are preempted by CEPA, (Defs.' Reply Br. 4–6) [15], and because the proposed amended complaint still pleads insufficient facts to support Plaintiff's claims, (*Id.* at 7, 11).

---

[1] In their Motion to Dismiss, Defendants state that Plaintiff's termination was effective on July 27, 2009.  (Defs.' Mem. 2 n.2) [8-1].

## ANALYSIS

### A. Legal Standard

Courts should "freely grant leave [to amend the pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Dole v. Arco Chem. Co.,* 921 F.2d 484 (3d Cir. 1990). Before dismissing a complaint under Rule 12(b)(6), a court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). An amended complaint is "futile" if it still fails to state a claim for relief under the Rule 12(b)(6) standard. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Under Fed. R. Civ. P. 12(b)(6), a defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a 12(b)(6) motion, a district court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to plaintiff, but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded facts have been identified, a court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)). A claim is only plausible if the facts pleaded allow a court reasonably to infer that the "defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1949).

B. **Defendants' Motion to Dismiss the CEPA Claim**

Defendants' motion argues that the Complaint fails to plead sufficient factual detail to support a cause of action under CEPA. In particular, Defendants point out that the Complaint does not state how Plaintiff discovered the allegedly fraudulent billing practices and when, how, or to whom Plaintiff made his complaints. (Defs.' Mem. 3–4.) Also, Defendants object to Plaintiff's failure to identify which laws or regulations were violated or how the billing practices were fraudulent. (*Id.* at 3.) We agree that the Complaint is insufficient to state a prima facie claim under CEPA, although not for the reasons Defendants suggest.

CEPA is designed to "protect employees who report illegal or unethical work-place activities" from retaliation by their employers. *Higgins v. Pascack Valley Hosp.*, 730 A.2d 327, 334 (N.J. 1999) (internal quotation omitted). A prima facie case requires the Plaintiff to demonstrate that: (1) he reasonably believed that his employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3[2]; (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dewelt v. Measurement*

---

[2] N.J.S.A. 34:19-3 reads:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
    a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
        (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or
        (2) is fraudulent or criminal . . . ;
    b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship . . . ; or
    c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
        (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
        (2) is fraudulent or criminal . . . ; or
        (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

*Specialties, Inc.*, 2007 WL 542234, at *4 (D.N.J. 2007) (citing *Dwozonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003)). "The initial burden of making a prima facie [CEPA] case is relatively easy to meet," and is satisfied "when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." *Bowles v. City of Camden*, 993 F. Supp. 255, 264–65 (D.N.J. 1998). We find that the Complaint satisfies the first three prongs; however, because Plaintiff has not alleged any facts to support the causal connection prong, the Complaint fails *Iqbal*'s plausibility standard.

To satisfy the first CEPA prong, Plaintiff need not identify a particular law, regulation, or public policy "as long as the court can identify the law or policy that might have been violated by the challenged conduct." *Brennan v. Palmieri*, 2008 WL 5233782, at *4 n.8 (D.N.J. 2008) (citation omitted). The Complaint alleges that the billing practices "violated several laws and public policies including, but not limited to, the laws and regulations which prohibit fraud and deceitful business practices." (Compl. ¶ 12.) This satisfies the first prong because the Court can easily identify laws and public policies that might have been violated by the allegedly fraudulent billing. Moreover, Plaintiff's proposed Amended Complaint specifically identifies the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, as one such law. (Am. Compl. ¶ 12.)

The second prong requires only that the Plaintiff engage in a whistle-blowing activity described in N.J.S.A. 34:19-3(c). *Dewelt,* 2007 WL 542234, at *4. Under N.J.S.A. 34:19-3(c), disclosing the objectionable practice to a supervisor is a whistle-blowing activity. The Complaint states that Plaintiff "objected to and opposed the illegal and fraudulent billing practices and complained about these practices to Defendants." (Compl. ¶ 10.) Although it would have been helpful if the Complaint had detailed when and to whom, specifically, Plaintiff

made his objections, we cannot say that this shortcoming dooms the CEPA claim. Plaintiff's Complaint states that he complained to Defendants; the Defendants were his supervisors and his employer. Therefore, we find that Plaintiff has satisfied the second prong as well.

The third prong is clearly satisfied: termination is an adverse employment action.

Finally, Plaintiff must allege a causal connection between the whistle-blowing activity and his termination. We conclude that he has not adequately done so. The Complaint states that Plaintiff was terminated "in retaliation for said objections, opposition and refusal," (Compl. ¶ 11), but provides no additional details to support that conclusion. Plaintiff cannot satisfy the fourth prong (causal connection) simply by satisfying the second and third prongs (whistle-blowing activity and adverse employment action) and then stating in a conclusory fashion that the termination was in retaliation for the whistle-blowing activity. *See Samodovitz v. Borough of New Providence*, 2007 WL 1217359, at *5 (D.N.J. 2007) (finding no causal link where "Plaintiff relies on self-serving, conclusory statements [that] . . . amount to nothing more than mere allegations that Defendant retaliated against Plaintiff"). Rather, Plaintiff must allege some facts "such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." *Bowles*, 993 F. Supp. at 265 (citations omitted). The evidence may be circumstantial. *Maimone v. City of Atl. City*, 903 A.2d 1055, 1065 (N.J. 2006). However, the only circumstantial evidence of causation presented in the Complaint is that Plaintiff was terminated within seven months after he discovered the fraudulent billing.[3] Although "[t]emporal proximity of the adverse action to the plaintiff's protected conduct can give rise to an inference of causation," *Bowles*, 993 F. Supp. at 263 (citing *Jalil v.*

---

[3] Plaintiff's failure to allege precisely when he complained to his superiors harms his ability to show causation. The Complaint only states when he discovered the fraudulent billing, not when he reported it. If Plaintiff could show that he did not report it until much later and was terminated immediately thereafter, he would have a stronger argument for causation based on temporal proximity.

*Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)), we find that a gap of seven months, without any additional facts, is not sufficiently proximate to support the inference of causation. *See Myer v. Spectra Gases, Inc.*, 2009 WL 2580350, at *3 (D.N.J. 2009) (holding that plaintiff failed to demonstrate causation because six months passed between protected activity and termination); *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005) (holding that plaintiff's termination four months after whistle-blowing activity did not, without more, suggest causal link); *cf. Jalil*, 873 F.2d at 708 (holding that Plaintiff demonstrated causation where plaintiff was discharged two days after filing an EEOC complaint); *Turner v. Associated Humane Societies, Inc.*, 935 A.2d 825, 834 (N.J. Super. Ct. App. Div. 2007) (holding that proximity of three weeks suggested causation).

We recognize how difficult it is to demonstrate what motivated an employer to terminate an employee. At the very least, however, Plaintiff could help his cause by answering some of the following questions: To whom did he make his complaints? What response did he receive? Was he told to keep quiet about the fraud or ordered to participate in it? Were any antagonistic actions (other than termination) taken against him after he complained? *See Van Haste v. Coram Healthcare Corp.*, 2008 WL 4513864, at *8 (D.N.J. 2008) ("[C]ausal link may be established through a showing of . . . a 'pattern of antagonism' following the protected activity . . . ."). It would also help to know whether there were any reasons given for his firing. *See Zaffuto v. Wal-Mart Stores, Inc.*, 130 F. App'x 566, 569 (3d Cir. 2005) ("[C]ircumstantial evidence of retaliation may include evidence that demonstrates such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-retaliatory reasons." (quotations

omitted)). We will dismiss the Complaint without prejudice to Plaintiff's ability to file a new complaint, alleging the facts that would support a prima facie causal connection between his whistle-blowing activity and his termination.[4]

### C. Plaintiff's Additional Counts in the Amended Complaint

Plaintiff's proposed Amended Complaint alleges two new claims: wrongful termination in violation of public policy, (Am. Compl. ¶¶ 15–18), and tortious interference with economic relations and prospective economic advantage, (*Id.* ¶¶ 19–20). Defendants argue that these counts are preempted by CEPA's statutory waiver provision, which provides:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J.S.A. 34:19-8. The New Jersey Supreme Court has interpreted the waiver provision to mean that institution of a CEPA claim waives "any rights or claims for retaliatory discharge based on a contract of employment; collective bargaining agreement; State law, whether its origin is the Legislature, the courts, the common law rule of court; or regulations or decision based on statutory authority . . . ." *Young v. Schering Corp.*, 660 A.2d 1153, 1160 (N.J. 1995). However, the "waiver provision does not prevent an employee from proceeding with his or her common-law tort and contract claims that are sufficiently distinct from the CEPA claim." *Young*, 660 A.2d at 1155. Essentially, waiver is "limited to claims for retaliatory discharge." *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 465 (D.N.J. 2009) (citation omitted).

---

[4] The Defendants also argue that the Complaint is lacking in sufficient factual detail to state a cognizable CEPA claim against the individual Defendants—Jonathan and Laurence Morris. Because we find that the Complaint fails to plead a CEPA claim against any of the Defendants, we need not address this alternative argument.

With this precedent as guidance, it is clear that Plaintiff cannot pursue both his wrongful termination and his CEPA causes of action. The allegations supporting his CEPA claim—that he was terminated in retaliation for his whistle-blowing activity—are the same allegations supporting the wrongful termination claim. Plaintiff is simply incorrect that *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505 (N.J. 1980), and *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167 (N.J. 2008), allow him to pursue both claims at once. Those cases recognize that both causes of action exist, but a Plaintiff must pick only one. *See Tartaglia*, 961 A.2d at 1179 ("[T]he CEPA requirement of an election precludes any plaintiff from proceeding on both theories simultaneously . . . ."). We therefore deny Plaintiff's motion to amend on this basis but without prejudice to his ability to file a new complaint in which he may elect to proceed under either remedy.

We will also deny the motion to amend as it pertains to Plaintiff's tortious interference cause of action because it too is preempted by CEPA. However, unlike Plaintiff's wrongful termination claim, his tortious interference claim is not categorically preempted. Rather, the fatal flaw in Plaintiff's proposed Amended Complaint is that he does not distinguish between the two theories of conduct that would support the tortious interference claim: (1) his wrongful termination, and (2) the threats and false statements made by Defendant Jonathan Morris after Plaintiff was terminated,[5] (Am. Compl. ¶ 14.) If the tortious conduct includes the wrongful termination, then the claim is barred by CEPA. If the tortious conduct is only the conduct occurring *after* Plaintiff was terminated, then the claim may be "sufficiently distinct" from the

---

[5] Paragraph 19 reads: "Plaintiff repeats and realleges the allegations of paragraphs 1 through 18 of the Complaint as if fully set forth herein." (Am. Compl. ¶ 19.) Paragraph 20 reads: "By virtue of the foregoing conduct, and especially the conduct set forth in paragraph 14 above, Defendant Company and Defendant Jonathan Morris, wrongfully and tortiously interfered with Plaintiff's actual prospective economic relations . . . ." (*Id.* ¶ 20).

CEPA claim to survive a motion to dismiss. *See Young*, 660 A.2d at 1155. If Plaintiff chooses to file a new complaint, he should clarify which conduct supports which claims.

## CONCLUSION

For the reasons set forth above, IT IS on this 7th day of February, 2011,

ORDERED that Defendants' Motion to Dismiss [docket # 8] is GRANTED; and it is

ORDERED that Plaintiff's Cross-motion to Amend the Complaint [11] is DENIED; and it is

ORDERED that the Complaint [1] is dismissed without prejudice; and it is

ORDERED that this case is closed.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.